ISAAC LINDBERG and David Lindberg, Appellants, v. W. P. BURTON, Respondent.

(171 N. W. 616.)

**Usury — legal rate of interest — statutory provisions relating thereto.**

1. Under § 6076, Compiled Laws 1913, declaring that the charging of a rate

of interest greater than that allowed by the statutory provisions therein specified, when knowingly done, shall be deemed a forfeiture of the entire interest, and providing that, in case the greater rate has been paid, the person paying it may recover back in an action for that purpose twice the amount of interest thus paid from the person who has taken or received it, provided such action is commenced within two years from the time the usurious transaction occurred, a cause of action for the penalty arises only when interest has actually been paid.

**Usury — what constitutes — must be "paid."**

2. The statute contemplates an actual payment, and not merely a further promise to pay. Interest is not "paid" within the meaning of the statute by the giving of a renewal note or notes.

**Usury — remedy for, purely statutory.**

3. The remedy provided by the statute is exclusive.

**Usury — recovery of penalty for — proof of payment.**

4. A party who seeks to recover the penalty prescribed by section 6076, supra, must bring himself within its provisions, and must allege and prove, among other things, that he has actually paid interest upon a usurious contract.

Opinion filed November 23, 1918.   Rehearing denied February 27, 1919.

From a judgment of the District Court of Burke County, *Leighton,* J., plaintiffs appeal.

Affirmed.

*E. R. Sinkler* and *M. O. Eide,* for appellants.

"The test of usury is: Will the contract if performed result in producing to the lender a rate of interest greater than is allowed by law, and was that result intended?" Rantalla v. Haish, 156 N. W. 666.

Compound interest, or interest upon interest, constitutes usury when contracted for contemporaneously with the creation of the original debt. Note in 33 L.R.A.(N.S.) 296.

An agreement made before interest becomes due to compound it is void. Gay v. Berkley, 100 N. W. 930.

A contract included in a single instrument to pay interest on interest will not be enforced. Lee v. Melby, 100 N. W. 379.

*Palda & Aaker* and *John E. Greene,* for respondent.

"The taking of interest notes at semiannual periods does not amount to the compounding of interest. Kellogg v. Hickok, 1 Wend. 522;

Tyler v. Yates, 3 Barb. 222; Kennon v. Dickins, 1 N. C. (Conference), 357; Connecticut v. Jackson, 1 Johns. Ch. 14; Mowry v. Bishop, 5 Paige, 98; Myer v. Muskatine, 1 Wall. 384–391; Goodale v. Wallace, 19 S. D. 417; Tyler, Usury, pp. 240–244.

CHRISTIANSON, J. The plaintiffs brought this action to recover the penalty for usury provided by § 6076, Comp. Laws 1913. The complaint sets forth three causes of action. The first cause of action is for interest upon an alleged usurious contract, alleged to have been paid on November 18, 1912. The second cause of action is for interest alleged to have been paid on November 18, 1913. And the third cause of action is for interest alleged to have been paid on November 18, 1914.

The answer denies that the defendant at any time reserved, charged, or received any usurious interest. The answer sets forth at great length the business transactions between the plaintiffs and the defendant. According to the allegations of the answer such transactions commenced in the year 1908, and have continued since that time. Such transactions consisted of loans made to the defendant in 1908, advancements made for various purposes during the subsequent years, and the taking of renewal notes from time to time. The answer also avers that the defendant is a man of very limited education and unable to compute the amounts due upon the various notes; and that at two different times when such renewals were made, he engaged the services of two different attorneys, and that the computations were made by such attorneys. It is specifically averred that the defendant at no time had any intention of charging, reserving, or receiving any usury, and that any errors made made in the computations or any overcharges included in the notes were the result of mistakes of computation, and that such amounts were not included for the purpose of exacting usury. The answer specifically admits that errors were made in such computations, in this that the plaintiffs were not allowed credit for a $75 payment, and that a note for $525 held by the defendant as collateral to their indebtedness was included in a renewal note by mistake; and defendant offers a remission of these amounts, with interest computed thereon from the dates the mistakes were made, and avers that the plaintiffs have been credited with these respective amounts upon the last renewal notes which the defendant now holds against the plaintiffs. The answer also alleges that the first and second causes of action are barred by the Stat-

utes of Limitations for the reason that the action was not commenced within two years from the time the alleged usurious transactions are alleged to have occurred.

From the transcript of the evidence, it appears that the defendant is a man sixty-five years old, and resides near Pelican Rapids, Minnesota. He has never been engaged in any business except farming. He is not, and never has been, engaged in the business of making loans. The loan involved in this action is the only one which he ever made, with the single exception of one which he made to a near relative. The defendant is a man of very limited education. His correspondence was carried on largely by his wife, and his business transactions, such as preparing notes and computing the amounts due on notes to be renewed, were carried on through his banker, or attorneys engaged by him for that purpose.

The transactions out of which this action arose began in January, 1908. From January 2, 1908, to March 18, 1908, the defendant loaned the plaintiffs in all $3,325, for which notes were taken. In September of that year he sold them some horses and advanced cash. The purchase price of the horses and the cash advanced aggregated in all $825. Hence, the total original indebtedness of the plaintiffs to the defendant so incurred and evidenced by notes taken in 1908 aggregated $4,150. It also appears that during the years 1909, 1912, 1913, and 1914, the defendant made further advancements to the plaintiffs, which according to defendant's testimony and documentary evidence aggregated in all $5,068.70. There is some dispute as to some of the items which go to make up this aggregate, but the greater portion of these advancements are undisputed. There is no dispute with respect to what payments have been made by the plaintiffs. The original notes bear indorsements to the effect that the interest thereon up to November 1, 1908, has been paid.

It is significant that these are the only indorsements upon any of the notes, indicating that any interest has been paid. The evidence also shows that the defendant received the following payments from the plaintiffs: In January, 1910, $75; in October, 1912, $776.54; November, 1913, $1,685.74; November, 1914 (or January, 1915), $2,907.05. There is, however, no evidence showing the application made of these various payments. The plaintiffs nowhere testify or even intimate that they directed that these payments be applied upon

interest. As already indicated the defendant made advancements from time to time. The different notes were renewed from time to time. The renewal notes were taken as collateral, and the old notes were not surrendered. And upon the trial of this action the original notes taken in 1908, and the different notes subsequently taken, were all introduced in evidence. As already stated there are no indorsements upon the notes showing payments of interest, except those showing interest paid to November 1, 1908. The only deduction that can reasonably be drawn from the transactions as disclosed by the evidence is that the payments were applied generally upon the indebtedness of the plaintiffs, and that there was neither any direction by the plaintiffs that the sums paid be applied on interest, nor any mutual understanding between the parties that they should be so applied.

At the close of plaintiffs' case the defendant moved for a directed verdict on the ground that there was no evidence from which the jury could find "that any amount of usury has been paid if any at all has been charged and paid; and there is no evidence in the case from which the jury can determine what, if any, sum in excess of 12 per cent interest has been paid." And upon the close of all the testimony the defendant renewed the motion for a directed verdict and moved for such verdict upon the grounds, among others, that under the undisputed evidence the plaintiff had failed to establish any of the causes of action set forth in the complaint, and that the evidence shows clearly that there has been no usurious charge "paid by the plaintiffs for the loan or forbearance of the moneys loaned to them by the defendant." The motion for a directed verdict was denied, and the cause was submitted to a jury, which returned a verdict in favor of the defendant. The jury also found in answer to interrogatories submitted by the court that the defendant had not knowingly charged any bonus. Judgment was entered pursuant to the verdict for a dismissal of plaintiffs' action, and plaintiffs have appealed from such judgment.

Our statute relative to usury provides: "No person, firm, company or corporation shall directly or indirectly take, or receive, or agree to take or receive in money, goods or things in action or in any other way, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than 12 per cent per annum; and in the computation of interest the same shall not be compounded. Any viola-

tion of this section shall be deemed usury; provided, that any contract to pay interest not usurious on interest overdue shall not be deemed usury." Comp. Laws 1913, § 6073.

"The interest which would become due at the end of the term for which a loan is made, not exceeding ninety days' interest in all, may be deducted from the loan in advance, if the parties thus agree." Section 6075, Comp. Laws 1913.

"The taking, receiving, reserving or charging a rate of interest greater than is allowed by §§ 6073 and 6075 when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back in an action for that purpose twice the amount of interest thus paid from the person taking or receiving the same; provided, that such action is commenced within two years from the time the usurious transaction occurred." Comp. Laws 1913, § 6076.

The last section is a duplicate of a provision contained in the National Banking Act, and was enacted in this state long after the original provision had been adopted by Congress.

It will be noticed that there are two entirely different provisions in § 6076, supra, and that each part applies to a different condition. It is first provided that where usurious interest has been knowingly contracted for, but not paid, the entire interest on the note or other evidence of indebtedness is forfeited. It is next provided that where such usurious interest has been paid the person by whom it has been paid, or his legal representative, may recover back, from the person who has taken or received it, twice the amount of the interest paid, in an action commenced within two years from the time the usurious transaction occurred. The purpose and effect of statutory provisions similar to § 6076, supra, have been considered by many of the courts of this country, including the Supreme Court of the United States. And the authorities are generally agreed that the statute provides for two different contingencies, or two distinct classes of usurious cases, and prescribes a different penalty as to each class. They further agree that in cases falling within the first provision,—*i. e.,* where usurious interest has been knowingly contracted for, but not paid,—all interest on the

usurious obligation is *ipso facto* forfeited, the debtor can defend against any claim for interest, and the creditor can recover only the sum lent, without any interest whatever. But in cases falling within the second provision,—*i. e.*, where the debtor has in fact paid interest upon the usurious contract,—he cannot plead such payment either as a credit on, or as an offset or counterclaim to, the principal; but his only remedy is to maintain the action to recover the penalty provided for in the second part of § 6076, supra. Schuyler Nat. Bank v. Gadsden, 191 U. S. 451, 48 L. ed. 258, 24 Sup. Ct. Rep. 129; Haseltine v. Central Nat. Bank, 183 U. S. 132, 46 L. ed. 118, 22 Sup. Ct. Rep. 50; Driesbach v. Second Nat. Bank, 104 U. S. 52, 26 L. ed. 658; Barnet v. Muncie Nat. Bank, 98 U. S. 555, 25 L. ed. 212; Farmers' & M. Nat. Bank v. Dearing, 91 U. S. 29, 23 L. ed. 196; Walsh v. Mayer, 111 U. S. 31, 28 L. ed. 338, 4 Sup. Ct. Rep. 260; Stephens v. Monongahela Nat. Bank, 111 U. S. 197, 28 L. ed. 399, 4 Sup. Ct. Rep. 337; McCarthy v. First Nat. Bank, 23 S. D. 269, 23 L.R.A.(N.S.) 335, 121 N. W. 853, 21 Ann. Cas. 437. In other words the courts uniformly hold that the remedy afforded by the statute is exclusive, and that a party who desires to claim the right granted by the statute must avail himself of the remedy therein prescribed, and can resort to no other form or mode of procedure.

As already indicated the instant action is brought under the second provision of § 6076, supra, to recover twice the amount of interest alleged to have been paid upon a usurious contract. The action is one for the recovery of a penalty. First Nat. Bank v. Morgan, 132 U. S. 141, 144, 33 L. ed. 282, 283, 10 Sup. Ct. Rep. 37; Barnet v. Muncie Nat. Bank, 98 U. S. 555, 558, 25 L. ed. 212, 213. In such action the defendant is charged with violating the law and thereby rendered liable for the penalty. It is elementary that a party who asserts a right to recover from another has the burden of establishing such right by a preponderance of the evidence. It is equally elementary that a violation of law is never presumed, and one who alleges such violation and predicates the right to recover a penalty thereon has the burden of proving the existence of the facts alleged. 39 Cyc. 1050; 30 Cyc. 1357.

Under the plain words of the statute an action to recover the penalty prescribed by § 6076 lies only "in case the greater rate of interest has been paid." A party who seeks to recover the penalty must therefore

41 N. D.—38.

allege and prove that such "greater rate of interest" has actually been paid. The statute contemplates an actual payment, and not merely a further promise to pay. The statute clearly makes a difference between interest which a note, bill, or other evidence of debt "carries with it, or which has been agreed to be paid thereon," and interest which has been paid. Interest is not "paid" within the meaning of the statute when included in a renewal note or evidenced by a separate note. "The time the usurious transaction occurred" has reference to the actual payment of the interest from which the penalty arises. Brown v. Marion Nat. Bank, 169 U. S. 416, 419, 42 L. ed. 801, 802, 18 Sup. Ct. Rep. 390; First Nat. Bank v. Lasater, 196 U. S. 115, 118, 49 L. ed. 408, 409, 25 Sup. Ct. Rep. 206; Driesbach v. Second Nat. Bank, 104 U. S. 52, 26 L. ed. 658.

As already stated, there is no evidence in the case at bar showing that the plaintiffs have paid any interest whatever to the defendant, or that any of the payments made have been so received by the defendant, with the single exception of the payments made for interest up to November 1, 1908. This payment is not involved in this litigation, however. No claim is made, therefore, in the complaint, and manifestly an action for its recovery would be barred by the express provisions of the statute.

Under the statute, a usurious obligation bears no interest. All interest thereon is *ipso facto* forfeited. And such forfeiture is not waived by the giving of renewal notes. Nor do such new notes operate as payment of the usurious obligations for which they are given, but in so far as they embrace forfeited interest, the new notes are without consideration. Brown v. Marion Nat. Bank, supra. Under the evidence in this case, the court would not be justified in applying the payments made by the plaintiffs as upon interest. See 39 Cyc. 1026. Hence, the plaintiffs clearly failed to establish any cause of action against the defendant, and the court should have granted the motion for a directed verdict. It would therefore serve no useful purpose to discuss the errors assigned upon the court's instructions to the jury, as the verdict was clearly right. Driesbach v. Second Nat. Bank, supra. The judgment appealed from must be affirmed. It goes without saying that the decision in this case will not, and does not, bar the plaintiffs from defending against the paying of interest on the obligations which

they owe the defendant, on the ground that all interest is forfeited on account of usury. Hence, if any usury exists, the plaintiffs still have ample remedy.

Affirmed.

GRACE, J. I concur in the result.

## On Petition for Rehearing.

PER CURIAM. Plaintiffs have petitioned for a rehearing. It is contended that the record "shows the payment of interest, and the exact amount paid upon interest." This contention is based upon certain statements in defendant's answer and certain answers given by him during his cross-examination. The point was not raised by appellant on the presentation of the case, but at that it was not overlooked by this court. On the contrary the question was called to the attention of the members of the court in a memorandum circulated with the former opinion, and was fully considered by them.

It is true there are certain statements in the answer of the defendant which are really admissions that some of the payments received by the defendant had been applied by him upon interest. But plaintiffs certainly did not rely upon these as judicial admissions. Defendant's testimony, and certain statements prepared by him as to the application of the payments received, are in effect directly contrary to such alleged admissions in the answer. In fact such testimony and such statements are to the effect that the money received by defendant was not applied upon interest at all, but was applied in payment of the subsequent advances made by the defendant,—and the answer also alleges, among other things, that the moneys were applied in payment of such advances. And as stated in the former opinion no portion of the payments received by the defendant were indorsed upon any of the notes as and for interest payments, or at all. It will also be noted that defendant's motion for a directed verdict (set out in the former opinion) was based upon the theory that the moneys received by defendant had not been applied upon interest. And during the course of the argument of plaintiffs' counsel to the jury, an incident occurred which is quite illuminating.

We quote from the record:

Defendant's counsel: We take exception to the remarks of counsel, there being no testimony in the record showing the payment of any interest at any time; the testimony showing that statements were drawn up, which were tabulated and for which general credits were given for the crops, the place as to where the same were applied not being stated, but it was simply a matter of figuring up the interest, and the statements balanced, and new notes being taken for the balance, there being no evidence of any interest being taken at any time; there being no testimony either of any interest being taken at any time.

The Court: Sustain the objection.

Plaintiffs' counsel: Now, am I permitted to argue on that, your Honor?

The Court: Not after the ruling, no.

Plaintiffs' counsel: The ruling comes before that. I just wanted the record to show, that is all.

It will be noted that plaintiffs' counsel in no manner intimated that there were any judicial admissions in support of the proposition he had been arguing.

In a brief presented by the defendant in this case, it was said:

"Before the plaintiffs could possibly recover in such an action as this, it must be shown that the interest has been paid by them. No proceeding has been taken by the defendant to enforce his claim against the plaintiffs. If they are entitled to this penalty, they must show the payment of the interest before they can recover it. They cannot recover the interest here for the purpose of offsetting it against a demand in a proceeding to foreclose the defendant's mortgages. There are two memorandum statements which are among the exhibits in this case, and they are marked with blue pencil X and XX. On the statement marked X is a memorandum taken from the evidence and the exhibits showing the total amount of moneys advanced for and loaned to the plaintiffs.

"Before the taking of the new note and mortgage for $9,000, the $9,000 note being exhibit 29, the amount of those advances and loans aggregated $7,987.80. After the settlement and the making of the new $9,000 note and the mortgage securing the same, and up to the

25th of January, 1915, the defendant paid out in discharge of encum-brances and other obligations of the plaintiffs the sum of $1,230.90; such payments being made with the consent and the approval of the plaintiffs and in order that the mortgage which the defendant took should be a first mortgage on the real property described in it. That made a total of loans and advances of $9,218.70.

"Referring now to the memorandum marked XX we find that the total amount of moneys paid by the plaintiffs since the beginning of this contract is $5,424.33. Now, the original loan was considered $4,150, the particular notes being referred to on the said memorandum XX, so that aside from the principal loan there was money actually advanced and paid out for liens, taxes, and other mortgages, and for horses, for the burial of his father, and sundry items of machinery, and seed grain, making the total above referred to of $9,218.70. If we deduct from that total sum the amount of the original five notes of $4,150, we will show that there were subsequent advances of sums from $3 up to $2,000, aggregating $5,068.70.

"Now, the record shows that there were payments made on four particular dates between January, 1910, and January, 1915; that the total of those payments was $5,424.33 or $355.63 over and above the amount of moneys actually advanced after the original loan of $4,150. *That these payments of money, as indicated on the statement XX, were applied to the discharge of the subsequent advances, is unquestionable, and it was the right of the defendant to so apply them, in the absence of proof that some other application was demanded.* If the total payments to the defendant by the plaintiffs were properly applied to the extinguishment of the subsequent advances listed on memorandum X, then there could have been payment of no interest on any of them in excess of the sum of $355.63. It will be observed that the figures given in the memoranda marked X and XX include no interest, and it was perfectly fair to assume, as the jury must have done, that the entire $5,424.33 was absorbed in the discharge only of the subsequent advances made by the defendant after the original loan was made. If that be so, how can the plaintiffs claim that they have paid the interest, or any interest contracted for in this case, or exacted from them by the defendant? It is incumbent upon them to prove in such manner as would satisfy the jury that they have paid interest upon the entire debt,

or that at least so much thereof as would entitle them to the amount which they claim. It is perfectly apparent that the plaintiffs have taken the position that all of the payments they made must have been applied on interest. That does not follow. The defendant was making them loans from $10 to $250 and $2,000 at frequent intervals during the whole term of eight or nine years, and it is not to be supposed that he was applying the moneys received from the plaintiffs to the payment of interest only, but rather that he was applying it to the payment of the later advances, leaving the original loans secured by the mortgages which were originally given for that purpose."

The answers of the defendant to which reference is made were elicited during cross-examination. He stated that he could not answer, and did not know how much money had been applied on interest, but that he thought his attorney could tell. When asked in regard to the statements in the answer already referred to, he stated that he thought the answer to be as near correct as he could get it, or remember it. But these isolated statements are not defendant's testimony. His testimony should be considered as a whole,—which was doubtless the way the jury considered it. Defendant's testimony so construed showed no application of any part of the moneys paid to interest.

As already stated in the former opinion, defendant was not a man used to carry on business transactions of the kind involved herein. He couldn't even compute interest, or prepare a promissory note for signature. He relied upon others to do these things for him. He turned his papers over to his attorney, and his attorney prepared the answer. While the admissions in the answer would have been binding if invoked, the parties had a right to place their own construction upon the pleading and the issues framed. Under the facts in this case it seems clear to us that plaintiffs placed no reliance upon the so-called admissions in the answer. Plaintiffs' theory, both in the court below and in this court, was and is that all payments received by the defendant must *ipso facto* be deemed applied upon interest. In fact this theory is still adhered to in the petition for rehearing. Referring to the statement showing the amount of moneys advanced by the defendant, and the sums paid by the plaintiffs, it is said that such statement shows "the total amount paid as $5,424.33." And the contention is advanced that "this shows over $5,000 paid in interest." This theory, as we

held in our former opinion and still hold, is unsound. It is contrary to the overwhelming weight of authority (39 Cyc. 1026), and would largely defeat the purpose of the usury statute.

The rule is elementary that where the parties act upon a particular theory in the trial court, they will not be permitted to depart therefrom when the case is brought up for appellate review. This is true of the construction placed upon pleadings. 3 C. J. p. 725. It is true as to the relief sought and the grounds therefor. 3 C. J. p. 730. It is true generally as to the theories acted upon by the parties in the court below. See 3 C. J. pp. 718 et seq. A party cannot proceed with a trial upon one theory, and advance another and inconsistent theory on appeal. A party cannot be heard to say for the first time on appeal that a certain issue does not in fact exist because of certain admissions in the pleadings. We adhere to the former opinion. A rehearing is denied.

GRACE, J. I concur in the result.